C. L. REDWINE, plaintiff in error, *vs.* JAMES GLOVER, executor, defendant in error.

(BY TWO JUDGES.)—1. Redwine and his wife obtained a decree, in 1859, against Shrine, as administrator upon the estate of the wife's father, for $6,500, and that certain negroes of the estate be sold, and one half the proceeds of such sale be paid over to the complainants, which decree was afterwards satisfied, and so entered on the minutes by payment of $10,200 by Shrine, but for which sum he really gave his two notes, payable to Redwine, one of which he paid, and the other was sued to judgment by Redwine, in 1862. Such note so sued to judgment, was not given for a negro consideration, and an injunction granted against the levying of the execution founded on such judgment, on the ground that it was based on a contract, the consideration of which was slaves, should have been dissolved.

2. On a writ of error, to the judgment of the Judge of the Superior Court under the Act of October 29th, 1870, this Court cannot review a decision overruling a demurrer to a bill. 12th March, 1872.

Slave debts. Novation. Writ of error. Before Judge COLE. Twiggs Superior Court. October Adjourned Term, 1871.

Glover, as administrator of Shrine, filed a bill containing the following averments : In October, 1868, Shrine died testate, having nominated him his executor. Glover qualified as his executor, and in December, 1868, as required by the will, sold Shrine's personal property to pay his debts, etc. Shrine owned eight-ninths of $10,000 worth of specified land. He bequeathed five hundred acres of it to Mrs. Bostmen. The balance Glover intended to sell, but for the reasons hereinafter stated.

When Shrine died he owed but little, except a judgment against him by Redwine, obtained in October, 1862, for $5,546 25, principal, $254, interest, etc. Redwine has caused the *fi. fa.*, founded upon said judgment, to be levied upon all of said land and is proceeding to sell the same. The widow of Shrine, for reasons stated, is entitled to one-ninth of said land, and a sale of the whole will embarrass a setlement with her.

The sale under Redwine's *fi. fa.* will occur in March, and, therefore, the land cannot be rented for this year, and the estate will thereby lose a year's rent.

The legatees say that Redwine's judgment is founded upon a debt, the consideration of which is slaves and their hire, and have notified Glover not to pay it because such debts cannot be enforced under the Constitution of 1868, and he believes that the facts are as the legatees claim. He prayed that Redwine's *fi. fa.* be enjoined. The Chancellor ordered Redwine to show cause why the injunction should not be granted.

Redwine answered that his was the only judgment against Shrine, and that it was obtained before Shrine married the said widow. He denied that any part of the consideration of the debt upon which his judgment was founded, was the price or hire of slaves, but said it was founded upon a note taken in satisfaction of a judgment which he held against Shrine. Glover amended his bill by averring as follows: In 1859, Redwine and his wife obtained a judgment against Shrine for $6,500 in money, and for the re-sale of five slaves; Shrine to have one-half of the proceeds of the slaves and they the other half. In 1860, Shrine purchased of Redwine his interest in said slaves at $5,000, and allowed Redwine $1,000 for his interest in their hire since the decree, and for this interest in slaves gave the note upon which said judgment is bottomed. Shrine was administrator of Glover, Redwine's father-in-law, and had bought said slaves at his own sale and held them twenty years, and Redwine got said decree to make him account for said slaves and their hire. Shrine paid all

the money decree and gave Redwine his note for his interest in the slaves.    Redwine when he took said note gave Shrine the following receipt: "Rec'd of Dan'l W. Shrine, $10,200 which is received as payment and satisfaction in full of the decree in the above case, including the principal and interest of the money portion, and also half of the value and hire for one year (since the verdict) of the negroes decreed to be sold, the value being agreed on between the parties, and the decree for the sale of the negroes being waived.    This is, therefore in full satisfaction of said decree."

Meanwhile, Glover had sold the property and had the proceeds in hand.

Redwine's counsel demurred to the bill for want of equity, because the remedy at law was complete, and because it appeared that said debt was not for slaves but in satisfaction of said decree.    He asked that the injunction be dissolved, the bill be dismissed, and that Glover be ordered to pay his judgment.    The Chancellor refused to do either, and this refusal is assigned as error.

B. H. HILL, for plaintiff in error.    No jury was needed, as the question of what was the consideration of the debt was one of law under the facts admitted : 40 Ga. R., 193, 423, 487.

B. HILL; S. HALL; A. W. HAMMOND & SON, for defendant.

MONTGOMERY, Judge.

1. The only question before this Court, in a shape to be passed upon, in this case, is whether, under the facts, as they appear in the record, the consideration of the note on which the judgment of Redwine was founded, was slaves, or the hire thereof.    The title of the slaves ordered to be sold, under the decree of 1859, never was in Redwine or his wife. They were only entitled to a distributive share of an estate,

Redwine *vs.* Glover.

in the hands of Shrine, as administrator, after he had duly administered it. The decree of 1859 ordered him to pay over so much as was ripe for distribution, and to proceed to administer and pay over the proceeds of the remainder. In satisfaction, in full, of this decree against him as administrator, he gave his two notes, for about $5,000 each, in his individual character, one of which is the foundation of the judgment enjoined, and received in return an entry of satisfaction, in full, of said decree on the minutes of the Court which rendered it; Redwine thus waiving not only his judgment, but abandoning all recourse upon Shrine's sureties. If we were of opinion, which we are not, that the foundation of the original decree was a debt, the consideration of which was a slave or slaves, or the hire thereof, there is such new consideration introduced here as to amount to a novation. We, therefore, think the injunction should have been dissolved.

2. The Act of October 29th, 1870, entitled "an Act to prescribe the practice in cases of injunctions, and other extraordinary remedies in equity, and the manner of taking judgments on the same to the Supreme Court," clearly confines this Court, in all cases coming before it under that Act, to a review of the judgment of the Court below, granting or refusing the injunction, or other extraordinary remedy sought by the bill. The overruling of a demurrer cannot, therefore, be brought before this Court, under the practice prescribed by that Act for bringing the judgments therein mentioned to the Supreme Court for correction.

The judgment of the Court below, refusing to dissolve the injunction, is reversed. The judgment overruling the demurrer is not passed upon.